UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERNEST W. VANN 91-B-2531,

                                    Plaintiff,                          COMPLAINT

                -vs-



BRIAN FISCHER; KENNETH S. PERLMAN;                    Index No._____
MARK J. LEONARD; ROBERT A. KIRKPATRICK;
KAREN F. CROWLEY; STEVE FURLANI;
DEACON GORDON STEINAGLE; DONALD SNYDER;
and DONNA J. NORTHRUP,

                                    Defendants.

                          INTRODUCTION

    1. This action is brought because of the continuing deprivation,

desecration of religious items, and discrimination of religious

rights of Native American prisoner's at Wende Correctional Facility,

that is encouraged, condoned or approved by the employees of the

Department of Correctional Services ("DOCS").

    2. This complaint is brought pursuant to 42 U.S.C. §1983, and seeks

injunction relief to enjoin Defendants from violating Plaintiff's

right to the free exercise of religion 42 U.S.C. §2000-1 and equal

protection of the law as guaranteed by the First and Fourteenth Amend-

ments to the United States Constituion.

    3. Defendants acting under color of state law, have violated Plaint-

iff's rights by failing to provide Native American prisoner's with

the opportunity to practice their traditional Native American religion

without justification.

    4. Through their policies and procedures, and through their failure

to implement policies and procedures, Defendants have denied Native

American's all means of religious expression. Defendants prevent

traditional Native Americans from possessing symbolic and sacred

items essential to the practice of their religion, they have denied

them the opportunity to engage in spiritual practices essential to

the practice of their religion including, but not limited to: Part-
icipation in seasonal ceremonies dictated by nature; regular meetings
for prayer; learning of their Native language; smudging and drumming
on a sacred drum that is not desecrated with human waste; denied
worship materials, supplies, education needs; ceremonial items;
required to practice another Way of Life (religion) over our own;
denied language materials; retaliation for filing grievances; attempted
extortion as harassment; discrimination; destroying Native American
religious (locker) area; refused to be a fulltime religious group, or
having a fundraiser according to rules; Staff Advisor approving for
the illegal withdrawal of funds from Native American Account; refused
permits for Native American Beads and shrine; grievance procedures
not followed according to law, both in congregation with other adherents
of their faith and individual observance.

## JURISDICTION

5. This is a civil action seeking relief and/or damages to defend
and protect the rights guaranteed by the Constitution of the United
States. This action is brought pursuant to 42 U.S.C. §1983. The court
has jurisdiction over the action pursuant to 28 U.S.C. §§1331, 1343
(3) and (4), and 2201.

## VENUE

6. Venue is in the Western District of New York pursuant to 28
U.S.C. §1391 (b)(1) and (2), because (1) a substantial part of the
events or omissions occurred in the Western District, and (2) six of
the Defendants reside there and all of the Defendants reside in New
York State.

PARTIES

1. Plaintiff, Ernest W. Vann 91-B-2531, at present resides at Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187.

2. Defendant, Brian Fischer, Commissioner, Department of Correctional Services, The Harriman State Campus, Building #2, 1220 Washington Avenue, Albany, New York 12226-2050. Defendant is sued in official and individual capacity.

3. Defendant, Kenneth S. Perlman, Deputy Commissioner Program Services, Department of Correctional Services, The Harriman State Capmpus, Building #2, 1220 Washington Avenue, Albany, New York 12226-2050. Defendant is sued in official and individual capacity.

4. Defendant, Mark J. Leonard, Director, Ministerial and Family Services, Department of Correctional Services, The Harriman State Campus, Building #2, 1220 Washington Avenue, Albany, New York 12226-2050. Defendant is sued in official and individual capacity.

5. Defendant, Robert A. Kirkpatrick, Superintendent, Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187. Defendant is sued in official and individual capacity.

6. Defendant, Karen F. Crowley, Deputy Superintendent Program Services, Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187. Defendant is sued in official and individual capacity.

7. Defendant, Steve Furlani, Education Supervisor, Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187. Defendant is sued in official and individual capacity.

8. Defendant, Deacon Gordon Steinagle, Catholic Chaplain, Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187. Defendant is sued in official and individual capacity.

9. Defendant, Donald Snyder, Coordinating Chaplain, Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187. Defendant is sued in official and individual capacity.

10. Defendant, Donna J. Northrup, Inmate Grievance Supervisor, Wende Correctional Facility, 3622 Wende Rd.,P.O. Box 1187, Alden, New York 14004-1187. Defendant is sued in official and individual capacity.

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A. Have you begun any other lawsuits in state or federal court dealing with the same facts involved in this action? __ Yes _X_ NO.

B. Have you begun any other lawsuits in federal court which relate to your imprisonment? Yes _X_ .

  1. Name of parties to this other lawsuit: Plaintiff: Ernest W. Vann
Defendant: Barton
  2. District Court: Western District of New York
  3. Docket Number: 92-CV-743(F)
  4. Name of District or Magistrate Judge to whom case was assigned: Leslie G. Foschio, U.S. Magistrate Judge
  5. The approximate date the action was filed: November 12, 1992
  6. What was the disposition of the case? Is it still pending: No _X_
If not, give the approximate date it was resolved: September 21, 1999

   Judgment upon motion entered for:Plaintiff

C. Have you begun any other lawsuits in federal court which relate to your imprisonment? Yes _X_ No___

  1. Name of parties to this other lawsuit: Plaintiffs: Ernest W.Vann, Patrick Wilson, Joseph Owen
Defendants: Donnelly, et al.
  2. District Court: Western District of New York
  3. Docket Number: 00-CV0911
  4. Name of District Judge: Hugh B. Scott
  5. The approximate date the action was filed: 2000?
  6. What was the disposition of the case? Is it still pending? Yes__
No _X_
   If not, give the approximate date it was resolved: February 1, 2005
   Disposition: Dismissed?

D. Have you begun other lawsuits in state court which relate to your imprisonment? Yes _X_ No___

  1. Name of parties to this other lawsuit: Plaintiffs: Ernest W.Vann, Darrly F. Schultz 89-C-0018
Defendants: Anthony F. Zon, et al.
  2. Supreme Court
  3. Docket Number: I-2005-3370
  4. Name of Judge: unknown
  5. The approximate date the action was filed: 2005?
  6. What was the disposition of the case? Dismissed

E. Have you begun other lawsuits in state court which relate to your imprisonment? Yes _X_ No____

  1. Name of parties to this other lawsuit: Ernest W. Vann
Defendant: Anthony F. Zon, ?

2. Supreme Court
3. Docket Number: I-2005-3938
4. Name of Judge: unknown
5. The approximate date the action was filed: 2005?
6. What was the disposition of the case? unknown

F. Have you begun other lawsuits in state court which relate to your imprisonment? Yes_X_No___

1. Name of parties to this other lawsuit: Ernest W. Vann
Defendant: Anthony F. Zon, ?
2. Supreme Court
3. Docket Number: I-2006-4539
4. Name of Judge: unknown
5. The approximate date the action was filed: 2006?
6. What was the disposition of the case? Is it still pending? Yes_X_

Disposition: It was either the Supreme Court or the Appellate Court that would not let me appeal.

A. FIRST CLAIM: Brian Fischer, Commissioner, Department of Correctional Services; Kenneth S. Perlman, Deputy Commissioner Program Services; Karen F. Crowley, Deputy Supt. for Programs, and Deacon Gordon Steinagle, Catholic Chaplain.

1. March 5, 2004. I wrote to Helen Dean, Deputy Supt. for Programs to find out when she was going to order our Dance Bells and (Ceremonial) Blanket that was approved by the Superintendent and Central Office Review (CORC) under Griev. #20748-04.

2. April 19, 2005. After arguing for months with the Staff Advisor about our religious items (°), I sent another request to Helen Dean, for all of the religious items.

3. November 26, 2006. After being told that the items were ordered, but never arrived month after month, I sent another request to the new Deputy Supt. for Programs, William Smith.

4. December 3, 2007. Sent a memorandum regarding the religious items for the Native American Community to Karen F. Crowley, Deputy Supt. for Programs.

5. December 12, 2007. I was told that according to the DOCS Budget we were to be given start up funds for the Native American Community, so I sent a request to find out about the funds to Mark J. Leonard, Director Ministerial and Family Services.

6. January 14, 2008. Received an answer from Mark J. Leonard's Office that my request was sent for review.

7. December 20, 2007. I was informed to send a proposal for the religious items to Karen F. Crowley, Deputy Supt. for Programs.

8. November 16, 2007. It was discovered that the facility is responsible for providing 100% of the basic necessities of a religious

---

(°) It is our "Way of Life" and not a religion, but society has called it a religion and the federal court, so any referance is not an admission.

group's worship/education needs in terms of supplies and materials.

I sent a copy of the person's letter who made this statement to him, and a request that he issue a memo to this facility so that we could obtain our supplies and materials for our worship and education needs.

9. December 17, 2007. Kenneth S. Perlman, Deputy Commissioner Program Services responded to my request that I have to contact Karen Crowley, Deputy Supt. for Programs for our religious worship needs and material.

10. January 21, 2008. I filed a Grievance #28066-08, regarding the religious items that was never supplyed.

11. January 22, 2008. I filed a Grievance #28066-08, against the memo I sent Karen Crowley, Deputy Supt. for Programs on December 3, 2007, regarding all of our ceremonial items.

12. February 26, 2008. A Native American meeting was held and we were told among other things that the proposal was to be sent to Albany for review and the facility would be ordering seven religious books.

13. February 27, 2008. I signed off on Grievance #28066-08, because I was told that there should not be any problem with ordering the materials on the proposal that I submitted.

14. February 28, 2008. I received a copy of the "Inbasket" that was from Karen Crowley, Deputy Supt. for Programs regarding Grievances #28065/66.

15. March 24, 2008. Sent a memorandum to Karen Crowley, Deputy Supt. for Programs regarding the grievances that was not mentioned and forcing Native Americans to practice another Way of Life (religion). Also Deacon Gordon Steinagle, Catholic Chaplain wanting Native Ameri-

-8-

cans to have only one religious book, like the christians.

16. March 29, 2008. I filed a Grievance #28484-08, regarding the lie from Karen Crowley, Deputy Supt. for Programs, that she never made the purchase of the items she said she would.

17. March 29, 2008. I wrote to Brian Fischer, Commissioner, Department of Correctional Services in a written complaint regarding the religious items; lies after lies by personnel; forcing Mohawk Way of Life upon other Native Americans; purchasing Mohawk books, but not other Native American books, and continued prejudice against Native Americans who are not Mohawks.

18. April 10, 2008. I wrote to Thomas R. Porter, Native American Chaplain/Native American Specialist, regarding the Dance Bells and Ceremonial Blanket. I also requested videos, books, etc., that was listed in the proposal of December 20, 2007.

19. April 18, 2008. Karen Bellamy, Director Inmate Grievance Program responded to my letter to the Commissioner, and stated that I have to submit this "grievance" (?), to the Inmate Grievance Program here at this facility.

20. April 18, 2008. Inmate Grievance Program #28484-08, requested that the relgious items that was promised should be given to us in a timely manner to practice our ceremonial rights.

21. April 18, 2008. I submitted an apology in Grievance #28484-08, to Karen F. Crowley, Deputy Supt. for Programs.

22. April 22, 2008. Karen F. Crowley, Deputy Supt. for Programs lied that I could order my Dance Bells. They are not listed under the Package Room Directive as an item we can order.

23. April 22, 2008. Karen F. Crowley, Deputy Supt. for Programs requested an order form with the information included on the order form to order the ceremonial Blanket for the Native American Community.

24. April 28, 2008. Decision on Grievance #28484-08, from Superintendent's Office that the Ceremonial Blanket will be purchased and the Dance Bells have to be purchased by the Inmate's requiring them.

25. June 10, 2008. Received Central Office Review Committee (CORC), on Grievance #28484-08, that now states that Dance Bells are not required and pursuant to Hughes v. Goord, there are no specific items required to be provided by the Department of Correctional Services.

26. June 14, 2008. I submitted evidence that CORC decision on Grievance #28484-08, was contrary to Grievance #20748-04, and DOCS Directive.

27. August 19, 2008. Received a response dated July 31, 2008, to my letter of June 14, 2008, to Karen Bellamy, Director Inmate Grievance Program, about the Grievance #WDE-20748-04 and Grievance #WDE-28484-08, being contrary to each other.


The constitutional basis for this claim under 42 U.S.C. §1983 is: Being denied to practice my own Way of Life, and have to practice (Mohawk) Way of Life; denied Ceremonial items and funds.


### EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:

Did you grieve or appeal this claim ? Yes. What was the result ? Grievance committee requested that the religious items that was promised should be given to us in a timely manner to practice our ceremonial rights.
Did you appeal that decision ? Yes. What was the result ? Superintendent said Ceremonial Blanket will be purchased. Dance Bells may be purchased by the individual inmates requiring them.
Did you appeal that decision ? Yes. What was the result ? Dance Bells if desired are the responsibility of an indiviual and are not required for group usage. Further, dance bells would be the subject of a security review prior to admittance into the facility. DOCS is not required to purchase any other property.

A. SECOND CLAIM: Robert A. Kirkpatrick, Superintendent; Karen F.
Crowley, Deputy Superintendent for Programs; Deacon Gordon Stein-
agle, Catholic Chaplain; Donna J. Northrup, Inmate Grievance Super-
visor

1. November 3, 2005.([2]), memorandum to Deputy Supt. for Programs
proving the hassle with Deacon Gordon Steinagle, Catholic Chaplain.

2. November 13, 2005. In a complaint that listed a number of issues
against Deacon Gordon Steinagle, sent to Glenn S. Goord, Commissioner,
one issue was the continuing harassment of not providing the Native
American Group with butane lighters to smudge with for their prayers
and at ceremonies within the Community.

3. November 28, 2005. Deputy Commissioner Program Services responded.

4. January 4, 2008. Deacon Gordon informed me that there was no
more butane lighters. On January 6, 2008, I sent a memorandum to
Deacon Gordon with the old lighter enclosed for exchange and that when
the new supply of lighters arrive in stock, the Native American Group
needs one in their locker. A copy of this memo was also sent to Karen
F. Crowley, Deputy Supt. for Programs, and Ms . Susan Schumache, Deputy
Superintendent for Administration.

5. January 14, 2008. (Deacon Gordon refused to provide the lighter).
I spoke with a Lieutenant and he made arraingments and got two lighters
and gave them to Karen F. Crowley, Deputy Supt. for Programs, and she
gave them to Deacon Gordon so that he could put them in the Native
American locker.

6. January 16, 2008. Deacon Gordon and myself was present when the
lighters was put in the Native American locker.

7. February 3, 2008. The Gym Officer Buell, verified that the butane
lighters was present in the Native American locker, because I informed

---

([2]) Number 1-3, are shown for the repeatability of deprivation.

him that I would not be coming to the Native American callouts because Deacon Gordon was extorting me that I had to pay for another inmate's food and I didn't want to be blamed if the butane lighters ([3]) came up missing.

8. February 10-17, 2008. Sometime during these days, two inmates showed up for the Native American Group meetings.

9. February 24, 2008. I returned to the Native American Group meeetings, and the same Officer Buell was working as on February 3, 2008, and he verified that the lighters was missing.

10. February 26, 2008. There was a Native American meeting and Karen F. Crowley, Deputy Supt. for Programs told us that a butane lighter would be put back in the Native American locker.

11. March 14, 2008. I sent a reminder to Karen F. Crowley, Deputy Supt. for Programs, that the Native American Indian Group needs a butane lighter.

12. March 21, 2008. I received my memo that I sent to Karen F. Crowley, Deputy Supt. for Programs on March 14, 2008, from Deacon Gordon that states: "you know the Drill, send me a slip for .38¢. Deacon".

13. March 23, 2008. I sent Karen Crowley, Deputy Supt. for Program a memo and quoted the procedures for a butane lighter for the Native American Group locker since 2002, and vehemently resented the insinuation of extortion from Deacon Gordon, or the Native American Community has to pay for a butane lighter that is for the Native American Indian Group locker.

14. April 3, 2008. I filed a Grievance #28625-08, that Deacon Gordon

_____

([3]) Butane lighters are no longer allowed to the rest of population, only to Native Americans for the use to smudge for purification and their sacred Pipes.

was extorting me for a butane lighter for the Native American Community and quoted the Directive #4761, 1V. (F).

15. April 1, 2008. Seen Robert A. Kirkpatrick, Superintendent in the hall by the Control Booth and explained a few of the problems that the Native American Group has been having the past (8) eight years, and he said to write them down and send him a note.

16. April 3, 2008. Sent Robert Kirkpatrick, Supt. a note as he requested that listed (10) ten issues.

17. April 6, 2008. Wrote to Mr. Sticht, Deputy Supt. for Security for some help in obtaining a butane lighter for the Native American Group so that we could do our prayers at religious services and at ceremonies.

18. April 8, 2008. Seen Thomas Sticht, Deputy Supt. for Security in the afternoon (°) in the A and D Lobby and he asked Karen F. Crowley, Deputy Supt. for Programs why is'nt Deacon Gordon giving the lighters to the Native American Group.

19. April 8, 2008. Thomas Sticht, Deputy Supt. for Security responded that Deacon Gordon has the lighters for the Native American use.

20. April 22, 2008. Karen F. Crowley, Deputy Supt. for Programs responded to the memorandum I sent Robert Kirkpatrick, Supt. on April 3, 2008, regarding the ten issues that the Native American Community was having. The only issue that she responded to was the butane lighter and that it will be provided at no charge.

21. May 9, 2008. Decision from Grievance #28625-08, that the facility

---

(°) This is the same date that an illegal search of the Native American locker was done and the inventory of the locker shows that there was no lighter. See, A.# THIRD Claim.

is required to provide the butane lighter to the Native American
Community and the Staff Advisor (Deacon Gordon) is responsible
for ensuring that this lighter is available for the Native American
Community.

22. May 11, 2008. Memorandum to Robert Kirkpatrick, Supt. regarding
the religious discrimination of Deacon Gordon Steinagle, Catholic
Chaplain to deny the Native American Community a butane lighter
since February 26, 2008. A copy of this memo was sent to Karen F.
Crowley, Deputy Supt. for Programs, and Thomas Sticht, Deputy Supt.
for Security.

23. May 18, 2008. Memorandum to Karen F. Crowley, listing four
issues. (1) Deacon Gordon did not deliver a lighter to the Native
American locker and that is why a numbered seal needs to be put on
the locker. (2) Deacon Gordon is telling other people that I'm
stealing the lighters. (3) Deacon Gordon told Karen Crowley that he
put a lighter in the Native American locker, but the Officer's log-
book will show that when they opened the Native American locker,
only one that does'nt work was in the locker and that is for exchange
for a new lighter. (4) That I deny and resent being accused of
thievery and I would not be any good as a facilitator or as a person
to set an example of thievery, and it is not proper to challenge my
loyalty to the Native American Community or myself as a Native Amer-
ican.

24. May 19, 2008. Decision of appeal of Robert Kirkpatrick, Supt.
on Grievance #28625-08, that claims on May 16, 2008, the date he
signed his decision that the Native American Community has been
supplyed a lighter, and denied the evidence of attempted extortion
by Deacon Gordon Steinagle, Catholic Chaplain.

25. May 19, 2008. Memorandum to Robert Kirkpatrick, Superintendent that DeaconGordon Steinagle, continues to tell other inmates that I'm the person stealing the lighters from the Native American locker.

26. May 19, 2008. Memorandum to Robert Kirkpatrick, Superintendent on Grievsnce #28625-08, explaining the lie about the lighter that was never supplyed by Deacon Gordon Steinagle, Catholic Chaplain.

27. May 23, 2008. Letter from Karen Crowley, Deputy Supt. for Programs, stating that she is going to get a different style of butane lighter and put it in the Native American locker, and working on getting the proper seals, that I mentioned in my memo of May 18, 2008.

28. May 4, 2008. I filed a Grievance #28753-08, about intentional religious discrimination by Deacon Gordon Steinagle, Catholic Chaplain.

29. May 25, 2008. Officer Buell and Sereant both verified that a butane lighter was in the Native American locker.

30. May 28, 2008. Decision from Grievance #28753-08, found that based upon documents presented at the IGRC hearing, there has been a continuing problem with Deacon Gordon Steinagle, Catholic Chaplain, as far back as 2004 ([2]).

The constitutional basis for this claim under 42 U.S.C. § 1983 is: Denied religious item that is for use to conduct daily and ceremonial prayers; attempted extortion as harassment; retaliate/harassment,and intentional religious discrimination.

---

([2]) In truth there is evidence of retaliation by Deacon Gordon Steinagle, that stems from 2001 in where he stated:"he will not do anything for me because I file grievances against him".

EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:
Grievance WDE-#28625-08

Did you grieve or appeal this claim? Yes. What was the result? Grievant is advised that this matter has been investigated and it has been determined that the facility is required to provide a lighter to the Native American Community to use for their religious services. The NA Community staff Advisor is responsible for ensuring that this lighter is available for the Native American Community.

Did you appeal that decision? Yes. What was the result? Native American Community has been supplied a lighter (5/16/08). Lighter will be exchanged on a one for one basis. The Native American Community is responsible for the cost if the supplied lighter is lost. There is no evidence of extortion directed to the Native American Community.

Did you appeal that decision? Yes. What was the result? CORC agreed with the Superintendent, and CORC was not presented with the Grievant's evidence that Deacon Gordon Steinagle was attempting to extort the Grievant.

Grievance WDE-#28753-08

Did you grieve or appeal this claim? Yes. What was the result? Grievance Committee feels that the facility Administration should investigate the relationship between the Native American Members and their Staff Advisor. As seen by the attached papers there appears to be some miscomunications as far back as 2004.

Did you appeal that decision? Yes. Continued on next page.

1. July 2008. I was told numerous times by the Inmate Grievance Representatives that my appeal on WDE-#28753-08, has not been returned from Central Office Review Committee (CORC).

2. July-August 2008. Sometime during this period Donna J. Northrup, Inmate Grievance Supervisor, told me that I have to write to the Director of the Inmate Grievance Program in Central Office and inquire about my appeal that was sent to them.

3. August 10, 2008. I sent a letter to Karen Bellamy, Director Inmate Grievance Program to find out about the status of my appeal that was forwarded to them on Grievance WDE-#28753-08.

4. September 2, 2008. I addressed another letter to Karen Bellamy, Director Inmate Grievance Program that she is violating the Directive to give me a decision within 30 days.

5. September 8, 2008. Karen Bellamy, Director Inmate Grievance Program responded to my letter of August 10, 2008, and stated that the Superintendent responded to my Grievance WDE-#28753-08, on June 4, 2008, and that the "clerk" is not in receipt of an appeal from me.

6. September 12, 2008. Sent a letter to Karen Bellamy, Director Inmate Grievance Program and asked why I did'nt receive my copy to appeal the Superintendent's decision? Why she didn't ask Ms. Northrup, to send me my appeal?, and why she didn't inform me this in response to my letter of August 10, 2008?

7. September 21, 2008. Wrote to Robert A. Kirkpatrick, Superintendent, and explained that I did not receive my copy of the decision from him so that I could file my appeal.

8. September 23, 2008. Talked to Mr. Kirkpatrick, Supt., in the Hall by the Control Booth and he said that he sent my letter to Ms. Northrup, Inmate Grievance Supervisor, and informed her to send me a copy of his decision and to give me an extension of time to appeal.

9. September 24, 2008. Received two copies of the Superintendent's decision on Grievance WDE-#28753-08, and a letter that stated "lies" by Donna J. Northrup, Inmate Grievance Supervisor, and that she denied me an extension of time to file my appeal.

10. September 24, 2008. I filed my appeal on the Superintendent's decision on Grievance WDE-#28753-08.

11. September 26, 2008. Sent a copy of all the documents that pertains to Grievance WDE-#28753-08, to Karen Bellamy, Director Inmate Grievance Program, because Donna J. Northrup, Inmate Grievance Supervisor would not grant an extension of time that was approved by the Superintendent on September 23, 2008. I asked Ms. Bellamy to except

this as a mitigating circumstance (reason being not provided with appeal [written response] from the Superintendent).

12. September 29, 2008. A letter with this date was sent to me that had the original appeal on grievance WDE-28753-08, and was received by me on October 2, 2008, from Donna J. Northrup, Inmate Grievance Supervisor, that admits her intentional malicious conduct and her lies.

13. October 3, 2008. I forwarded all documents and quoted the law of her admission to deny me my right to appeal, to Karen Bellamy, Director Inmate Grievance Program.

14. October 1, 2008. Karen Bellamy, Director Inmate Grievance Program responded to my letter of September 2, 2008, and stated that the Superintendent answered my grievance WDE-28753-08, on June 4, 2008, and that the clerk did not receive an appeal from me.

15. October 6, 2008. Karen Bellamy, Director Inmate Grievance Program "refused" all documents and returned them to me that was in response to my letter dated September 26, 2008. She also quoted an unknown Directive section, and stated that I should file a separate grievance.

16. October 9, 2008. Karen Bellamy, Director Inmate Grievance Program responded to my letter dated September 12, 2008, and quoted an unknown Directive section again.

17. October 10, 2008. Filed a new grievance of discrimination against Donna J. Northrup, Inmate Grievance Supervisor, regarding WDE-28753-08, because she is denying me as a Native American to appeal my grievances.

18. October 24, 2008. Filed a official complaint with Brian Fischer, Commissioner, that he has a problem with the Grievance Supervisor, Donna J. Northrup, of not forwarding appeals and processing grievances

pursuant to Directive and Correction Law, and attached the document
dated October 10, 2008.

19. October 28, 2008. The Grievance that I submitted WDE-29738-08,
was entitled "Harrassment" and was not processed as discrimination
as I stated on October 10, 2008.

20. November 25, 2008. Received the Superintendent's decision on
Grievance WDE-29738-08 and filed my appeal.

21. On page 1 6, I stated that the appeal results would be continued
on the next page, regarding Grievance WDE-28753-08.

22. The appeal procedures on Grievance WDE-28753-08, were prevented
and I was forced to have Grievance WDE-28753-08 made part of Grievance
WDE-29738-08, so that it would be exhausted.

23. December 2, 2008. Received a letter dated November 25, 2008,
from Karen Bellamy, Director Inmate Grievance Program in which she
returned the original appeal on WDE-28753-08, and stated that my
appeal was not accepted as it was beyond the time frames outlined in
Directive #4040 and I did not present sufficient mitigating circum-
stance.

## EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:
### Grievance WDE-29738-08

Did you grieve or appeal this claim ? Yes. What was the result ?
Superintendent stated:"The grievant states that IGRC Supervisor
discriminated against grievant by refusing to hear his appeal to the
Superintendent's decision based on the fact that the decision was sent
to the wrong cell location. The employee states that she in no way
harassed or discriminated against the grievant. She stated that his
appeal was untimely. This grievance was in fact appealed at the direct-
ion of the Superintendent. Even though it was not submitted in a timely

manner, and appeal was denied by Superintendent. The investigating employee states in reviewing all the information presented as well as the employee's response to this grievance, there is no evidence to support the grievant's allegations. The evidence provided to this reviewer does not substantiate a grievance of harassment, discrimination or abuse of authority by staff".

Did you appeal that decision ? Yes. What was the result ? Central Office Review Committee (CORC) stated:" CORC notes that this matter has been properly investigated by the facility administration and the employee in question has denied any improper action. Contrary to the grievant's assertion's, CORC has not been presented with sufficient evidence to substantiate any malfeasance by the employee referenced in the instant complaint.

CORC notes that the grievant was notified five times, in writing, by the Director of the Inmate Grievance Program, that his appeal of WDE-28753-08 was appropriately returned to him in accordance with Directive #4040, Section 701.5(d)(1). For clarification, CORC notes that the Superintendent answered WDE-28753-08 on 6/4/08, and the grievant's did not appeal within the time frames outlined in Directive #4040, nor did he present sufficient mitigating circumstances to warrant an exception to these time limits. There is no evidence of discrimination by the IGP Supervisor, against Native American's, as alleged.

In regard to the grievant's appeal, CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level.

A. THIRD CLAIM: Robert A. Kirkpatrick, Superintendent; Karen F. Crowley, Deputy Superintendent for Programs; Deacon Gordon Steinagle, Catholic Chaplain.

1. April 8, 2008. In the afternoon when I returned from my work assignment, I was told that I was wanted in the gym.

2. When I arrived Steve Furlani, Education Supervisor/Inmate Organization Coordinator told me that I have to put all of our Native American items in the new small black locker. But first, all of the items has to be inventoryed (°). I told him what am I going to do with the Sacred Drum and Sacred Pipe (²)? I told him that Ms. Crowley (Karen F. Crowley, Deputy Supt. for Programs) said we could keep the big locker because of the Drum and Pipe. Him and the Sergeant agreed that Ms. Crowley was very clear on that topic that we cannot keep the big locker.

3. The Sergeant said a Search of the locker has to be done first (the Sergeant was looking towards the Officer's desk and I looked that way also and seen Officer Rodriguez coming out of the bathroom and was removing his fingers from his zipper and was walking over to where we were).

4. I informed the Sergeant that where was the Deacon (Deacon Gordon Steinagle, Catholic Chaplain) or Lieutenant to supervise the Search

---

° At the end of the Search the Sergeant handed me a tablet of writing paper with carbon paper between the sheets and told me to "write down every item in the locker". Steve Furlani then got another inmate to write down every item while I took everything out of the big locker and put them into the smaller locker.

---

² Steve Furlani suggested that we remove some of the shelves, but the Drum still will not fit. He stated that the Drum, Pipe and anything else that doesn't fit in the new locker will have to be put in the back room, in another locker. I tried to explain that other inmates' are not to have access to the Sacred Drum and Pipe. The Sergeant said that they will not have access to your items.

and the protection of the artifacts ? Sergeant said he is the Super-
visor.

5. Officer Rodriguez said move back Vann [Plaintiff] and I will
search the locker. He then proceeded to search the Native American
locker for contraband. Then a civilain came out of the bathroom
across from the Native American locker.

6. Inmate Smith came out from the Chaplain's Office, and stated
that he was very upset ([3]).

7. Towards the end of the search, Deacon Gordon Steinagle, Catholic
Chaplain came out into the hallway where the Native American locker
is and said he had to use the bathroom, so the Sergeant moved over
and spoke to Deacon Gordon, and Deacon Gordon said that "he will not
be out here while he [pointed towards me (Vann)] is here.

8. Officer Rodriguez continued to search the Native American locker
and when he was done told me to "bring the Drum and Pipe into the
back room, of Room #1, and you can put the Drum and Pipe in a big
locker where the rest of the religious items are from the other
groups.

9. Later I put the electric frying pan and two serving trays in
the big locker also.

10. April 8, 2008. I filed a Grievance #28627-08, that the Native
American religious locker was searched in violation of the Depart-
ment of Correctional Services DOCS) Directive ([0]) , and the Sacred
Drum that is a religious item is no longer protected, and the locker

([3]) An affidavit has been given to the Plaintiff regarding the
incident.

([0]) There is a list of dates that the locker has been searched
and broken rattles and grievances that is recorded but never
resolved.

that was designated as a religious area.

11. April 11, 2008. I asked inmate Smith what locker and shelf his Wicca Religious Board is on in Room #1, and he said it is on the second or last locker and on the second or middle shelf. I told him that this was not true because our Sacred Drum and Sacred Pipe, electric frying pan and two serving trays are on the second shelf.

12. April 13, 2008. I filed a Grievance #28627-08, because the Native American Indian Group locker is no longer properly labeled and there is no seal to protect against a violation of future searches.

The constitutional basis for this claim under 42 U.S.C. § 1983 is: Intentional desecration of Native American Indian religious artifacts; Intentional destruction of Native American Religious Area.

<u>EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:</u>

Did you grieve or appeal this claim? Yes. What was the result? Inmate Grievance Resolution Committee (IGRC), stated that the Native American religion is entitled to store all of their religious artifacts in one locker that must be labeled a religious area per the DOCS Directive and the locker should be of sufficient size to store all artifacts as they pertain to the Native American Religion.

Did you appeal that decision? Yes. What was the result? Superintendent stated that the Native American Community has been provided with a different locker that is consistant with all other religious lockers, lockers are being updated with new locks, there was no search done to the lockers and that items that don't fit in new locker are to be stored in chaplain's office.

Did you appeal that decision? Yes. What was the result? Central Office Review Committee (CORC) agreed with the Superintendent. That the Native American locker was labeled. The drum is stored outside the locker because it will not fit inside.
That the drum can be stored with other items of other faith groups. That there was not sufficient evidence to substantiate any malfeasance by staff.

A. FOURTH CLAIM: Brian Fischer, Commissioner, Department of Corre-
ctional Services; Kenneth Perlman, Deputy Commissioner Program
Services; Robert A. Kirkpatrick, Superintendent; Karen F. Crowley,
Deputy Superintendent for Programs; Steve Furlani, Education Super-
visor; Deacon Gordon Steinagle, Catholic Chaplain.

1. On or about April 27, 2007, I ordered a case of candy to sell
for the Native American Fundraiser.

2. In May 2007, I began taking orders for candy from the inmates
in General Population.

3. On June 8, 2007, I ordered a case of candy because someone lost
the previous order.

4. On July 6, 2007, I received a verified letter that the Company
Mister Snacks Inc., never received the check for the candy that I
ordered for the fundraiser for the Native American Indian Group.

5. On July 6, 2007, I filed a Grievance #26942-07, because of the
prejudice in the Administration against Native Americans, and not
against Black, Hispanic or White inmates.

6. On July 8, 2007, I sent Deacon Gordon Steinagle, Catholic
Chaplain, a copy of my memo that informed him that I filed a Grie-
vance and that the Company did not receive the check for the candy.

7. At the Inmate Grievance Resolution Committee (IGRC), I submitted
a copy of the Native American Indian Fundraiser Form #3089, that was
approved in November 2003.

8. I appealed these decisions because I was told that we have to
pre-sale our orders before we can order the candy.

9. In July 2007, I had to fillout disbursements (FORM 2706) so
that approximately 18 inmates could receive their money back because
we were not allowed to use our fundraiser.

10. On October 5, 2007, there was an Inmate Facilitator meeting and
the Native American Indian Group was told that we have to pre-sale

our candy before we can place an order.

11. October 5, 2007. During the meeting I tried to explain to Karen F. Crowley, that I do not believe that the Directive says anything about pre-sale and that it would not be proper to expect an inmate to wait six months to a year for a .50¢ bag of candy.

12. October 16, 2007. In a memo Steve Furlani, Education Super-visor, agreed with Karen F. Crowley, that the Hard Candy Fundraiser for the Native American Indian Group is disapproved as all orders must be pre-sale.

13. October 18, 2007. Deacon Gordon Steinagle, Catholic Chaplain, submitted his own memorandum to Karen F. Crowley, that outlines the procedure for the pre-sale of candy.

14. November 21, 2007. I sent John H. Nuttall, Deputy Commissioner Program Services a letter with supporting documents that the Native American Indian Group was denied a fundraiser that is contrary to Directive #4760.

15. December 13, 2007. In a letter from Kenneth Perlman, Deputy Commissioner Program Services, on behalf of Brian Fischer, Commiss-ioner, they refused to follow their own Directive and advised me that the Executive Team here at Wende Correctional Facility has implemented the pre-sale procedure and must be adhered to by all inmate groups and organizations.


The constitutional basis for this claim under 42 U.S.C. §1983 is: Prejudice against Native Americans and Administration not prejudice against Muslims, etc.

EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM?

   Did you grieve or appeal this claim? Yes. What was the result?
Inmate Grievance Resolution Committee (IGRC), stated that grievant
is advised, it is determined that fundraisers have to be pre-approved.
There is no record of an approved Native American fundraiser for
candy. The request must be made in writing to the inmate organizer
coordinator.
   Did you appeal that decision? Yes. What was the result? Superint-
endent agreed that Native American Inmate Organization's request for
a fundraiser was approved in November 2003; Native American Sales will
be treated the same way as any organization placing an order; all
orders must be pre-approved with appropriate paperwork filed; Inmate
Organization Coordinator must review purchase request and receive
approval before orders are processed; communication between the advisor
and the group members is necessary to achieve efficient processing.
   Did you appeal that decision? Yes. What was the result? Central
Office Review Committee (CORC), stated that the Native American Group
fundraiser disbursements were refunded. The Native American Group can
send a new purchase order for approval.

A. FIFTH CLAIM: Brian Fischer, Commissioner, Department of Correc-
tional Services; Kenneth Perlman, Deputy Commissioner Program
Services; Robert A. Kirkpatrick, Superintendent; Karen F. Crowley,
Deputy Superintendent for Programs; Steve Furlani, Education
Supervisor.

1. December 13, 2007. In a letter from Kenneth Perlman, Deputy
Commissioner Program Services, on behalf of Brian Fischer, Commiss-
ioner, I was informed that the Executive Team at Wende Correctional
Facility has implemented the pre-sale procedure under their own local
rules and regulations and must be adhered to by all inmate groups
and organizations.

2. January 3, 2008. After being informed that the Directive, of
the Department of Correctional Services (DOCS) does not apply to the
Native American Group, and that it would be impossible to have a
good business relationship with the Inmate General Population in
selling candy for the fundraiser for the Native American Group, it
was decided by the Native American Members that we would cancel the
fundraiser and be a fulltime religious group.

3. January 3, 2008. Sent Karen F. Crowley, Deputy Supt. for Pro-
grams the original FORM 3087 to change from fundraiser to fulltime
religious group and the letter as evidence of December 13, 2007,
from Kenneth Perlman, Deputy Commissioner Program Services.

4. February through April 2008. I asked Steve Furlani, Education
Supervisor and Karen F. Crowley, Deputy Supt. for Programs on several
occasions about the form to return to a religious group, and they
did not know anything about the form that was submitted.

5. May 14, 2008. (°) I asked Steve Furlani, for a new Form 3087,
and after waiting almost three weeks, I had one copyed from the
Directive.

─────────────────────────────────────────────
(°) I was in his Office and he crossed out one part of an illegal
act from an inmate who was stealing money with the help from Deacon
Gordon Steinagle, Staff Advisor, from the Native American Account.
See, Claim #__SIXTH____.   -27-

6. May 25, 2008. Had a new Form 3087 filled out and signed by us Native American members and forwarded the form to the Inmate Organization Coordinator, Steve Furlani, per the Directive.

7. On February 23, 2009, I submitted a grievance because I was ignored every time I inquired about our application (FORM 3087), to return to a fulltime religious group, and this is the second time we submitted an application.

8. The grievance was assigned number WDE-30366-09.

The constitutional basis for this claim under 42 U.S.C. §1983 is: Refused to let Native Americans be a full time religious group.

### EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:

Did you grieve or appeal this claim ? Yes. What was the result ?

Inmate Grievance Resolution Committee (I.G.R.C) stated that: "it has been determined that the Native American Indian Group is already a practiced religion. Per the DSP grievant is not longer the facilit-ator for the Native American Group and has not been for quite some-time. Per Directive #4760 111., the inmate organization coordinator should submit this form on behalf of that organization.

Did you appeal that decision ? Yes. What was the result ? Superin-tendent stated that: "

A. SIXTH CLAIM: Kenneth S. Perlman, Deputy Commissioner Program Services; Karen F. Crowley, Deputy Superintendent for Programs; Steve Furlani, Education Supervisor; Deacon Gordon Steinagle, Catholic Chaplain.

1. In May 2008, I received a note that Deacon Gordon Steinagle, Catholic Chaplain, was in B-Block, 11 Company, and approved for an inmate to order some personal items out of the funds from the Native American Account, but to not let inmate Vann know about it because they could get into trouble.

2. On or about May 14, 2008, I asked Steve Furlani, Education Supervisor (°), if he received a "Purchase Request" from the Native American Group ? He stated that he believes he did and it is still on his desk, and if I have time to come up to his Office, he will check.

3. He had the Purchase Request on his desk. I showed him that the "Rosette", tobacco and some of the other items was an illegal purchase and use of funds from the Native American Account.

4. Mr. Furlani then "crossed out" the Rosette, but left the other items on the Purchase Request for someone else to reject the order as an illegal use of funds.

5. On June 2, 2008, I seen Karen F. Crowley, Deputy Supt. for Programs in front of B-Messhall Doors, and explained the situation to her about the illegal use of funds from the Native American Account, and she stated that she was on her way up front (to her office) and she will check on the Purchase Request, and in the meantime for me to make copies and she will meet with me later on.

---

° He also has the title of Inmate Organization Coordinator. Also upon information and belief this is the same day that I requested a form from him.

6. On June 3, 2008, I submitted a F.O.I.L. Request for a copy of the Purchase Request from Wanda Stachowski, Inmate Records Coordinator 11.

7. On June 19, 2008, I sent Karen F. Crowley a memo to remind her that I made copies for her and that we hav'ent had our meeting.

8. On July 10, 2008, I seen Karen F. Crowley before she went up stairs to the school Building and asked her about the money being stolen from the Native American Account, and she said she has'nt checked into the matter yet.

9. On July 16, 2008, I was given a Direct Order that I had to go to the Gym to see Deacon Gordon Steinagle. Deacon Gordon read a letter that I should not be the facilitator for the Native Americàn Group because my motives are not in the best interest of the Native American Group.

10. On July 28, 2008, I received a copy of the Purchase Request and the document proved my allegation that money was being stolen from the Native American Account.

11. On July 28, 2008, I filed a Grievance # 29334-08    , that Deacon Gordon Steinagle approved for money to be stolen from the Native American Account.

12. On August 3, 2008, I sent a complaint to Kenneth S. Perlman, Deputy Commissioner Program Services, with supporting evidence so that he can take appropriate action.

13. During my Inmate Grievance Resulution Committee (IGRC), Karen F. Crowley, Deputy Supt. for Programs submitted a memo that accused me of making a ridicuious allegation against Deacon Gordon Steinagle, and I did not submit any proof with my grievance.

14. August 19, 2008. I submitted a memorandum to Karen F. Crowley, regarding condoning the theft of funds from the Native American Account, and submitted a document that proves beyond a reasonable doubt that Deacon Gordon Steinagle approved the theft of funds from the Native American Account.

15. August 28, 2008. The decision of Inmate Grievance Resolution Committee (IGRC) agreed with me that Deacon Gordon Steinagle, Catholic Chaplain, ordered **"contraband"**.

16. September 3, 2008. Letter from Kenneth S. Perlman, Deputy Comm-issioner Program Services, informed me that he forwarded my letter/complaint of theft of funds from the Native American Account, to Superintendent Robert Kirkpatrick for investigation/resolution and to take appropriate action.

17. September 4, 2008. I agreed with the decision of IGRC and filed my appeal to the Superintendent.

18. September 7, 2008. I prepared an affidavit to have the appropriate officials to file charges and prosecution of Deacon Gordon Steinagle, Catholic Chaplain, for the theft of funds from the Native American Account.

19. September 9, 2008. Robert A. Kirkpatrick, Superintendent, alleged that grievant supplied no evidence that money was stolen from the Native American Account.

20. September 11, 2008. I filed my notice of appeal to Central Office Review Committee (CORC).

21. September 15, 2008. Filed a copy with the Inspector General, Department of Correctional Services, to have Deacon Gordon Steinagle, Catholic Chaplain, prosecuted on felony charges.

22. September 15, 2008. Filed a copy with the New York State Police

Department to have Deacon Gordon Steinagle, Catholic Chaplain, prosecuted on felony charges.

23. October 9, 2008. Received this dated notice on October 20, 2008, from David L. McNulty, Major, Bureau of Criminal Investigation, New York State Police, in response to the evidence that I sent them, and they have forwarded the material to the "Inspector General's Office".

The constitutional basis for this claim under 42 U.S.C. §1983 is:
Violation of stealing money from Native American Account.

**EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:**

Did you grieve or appeal this claim ? Yes. What was the result ? Inmate Grievance Resolution Committee (IGRC), stated that the Department Directive allows for items that can be used for Native American religious practice, and that any other than non-tobacco and pinion are contraband and should not have been ordered.

Did you appeal that decision ? Yes. What was the result ? Superintendent stated that grievant has supplied no evidence that money was stolen from the Native American Indian Group Account. All money withdrawn from Native American Account is documented and authorized.

Did you appeal that decision ? Yes. What was the result ? Central Office Review Committee (CORC), stated that "contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff. CORC notes that Deacon S... denies the allegations of stealing from the Native American fund. CORC notes that Directive #4040, Section 701.1, states, in part, that the grievance program is not intended to support an adversary process. With respect to the grievant's appeal, his exhibits have been reviewed and CORC has not been presented with evidence of theft by staff".

A. SEVENTH CLAIM: Robert A. Kirkpatrick, Superintendent; Karen F. Crowley, Deputy Superintendent for Programs; Deacon Gordon Steinagle, Catholic Chaplain; Donna J. Northrup, Inmate Grievance Supervisor

1. In a memo dated July 11, 2008, I was informed that I would no longer be the facilitator for the Native Americans.

2. On July 16, 2008, I was given a Direct Order that I had to go to the gym and see Deacon Gordon Steinagle.

3. Deacon Gordon read a letter that I should not be the facilitator for the Native American Group because my motives are not in the best interest of the Native American Group.

4. Sent a letter to Thomas Porter, Native American Chaplain, regarding being penalized because of grievances I've submitted on behalf of Native American Religious Rights.

5. July 30, 2008. Submitted a Grievance WDE-29322-08, because I was told that it was retaliation because of the grievances I filed and it was the advise from Deacon Gordon to Karen Crowley.

6. October 10, 2008. Memorandum to Robert A. Kirkpatrick, Superintendent, with four (4) exhibits that prove that Donna J. Northrup, Inmate Grievance Supervisor, is not letting me appeal.

7. October 28, 2008. Letter from Donna J. Northrup, Inmate Grievance Supervisor, regarding Grievance WDE-29322-08, in response to my letter to Robert A. Kirkpatrick, Superintendent, that I am once again being denied to appeal my grievances.

8. November 7, 2008. Sent a memorandum to Robert A. Kirkpatrick, Superintendent, regarding the failure to receive his written response on WDE-29322-08, pursuant to the Directive; and addressed the same kind of problem with WDE-28753-08 that is addressed in WDE-29738-08,

that is caused by Donna J. Northrup, Inmate Grievance Supervisor, and of her sending my grievance papers to another inmate that violates the Directive.

9. November 7, 2008. Sent a complaint to the Inmate Liason Committee (ILC) regarding Donna J. Northrup, Inmate Grievance Supervisor, of refusing to forward appeals, sending grievance documents to another inmate's cell, etc.

10. November 13, 2008. Robert A. Kirkpatrick, Superintendent told Sgt. Scott, IGRC, to give me (hand deliver) a copy of WDE-29322-08.

11. November 13, 2008. After receiving a copy of the documents from Sgt. Scott on WDE-29322-08, I noticed that there was no written response from the superintendent, and Sgt. Scott said that he did not see one in the file, but it may be in the other room.

12. November 14, 2008. I addressed this issue in a memorandum to the Superintendent and returned these same documents to the Superintendent.

13. November 17, 2008. I received the Superintendent's decision on WDE-29322-08, and filed my appeal.

14. November 18, 2008. Received a letter from the Superintendent in which he alleged that I didn't submit my appeal; and based upon my alleged untimeliness, he will let me submit my appeal.


The constitutional basis for this claim under 42 U.S.C. §1983 is: I was retaliated against because of the grievances I filed which is proven by the DOCS Directive's and violates 42 U.S.C. §1997d; Directive #4040, §701.6(b); Correction Law §138, subd. (4).

## EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:

Did you grieve or appeal this claim ? Yes. What was the result ? Inmate Grievance Resolution Commettee (IGRC), stated that grievant is advised that this committee has no way to ascertain if grievant was removed based on the grievances he filed.

Did you appeal that decision ? Yes. What was the result ? Superintendent stated: "Per investigation, grievant was recommended to be removed as facilitator of the Native American group by Central Office Ministerial Services. Grievant has been removed as facilitator. Decision was not made at the facility level and will remain in effect. There is no evidence or witness to retaliatory action against the grievant".

Did you appeal that decision ? Yes. What was the result ? Central Office Review Committee (CORC) stated: " that CORC asserts that the grievant was appropriately removed as a facilitator due to his inability to interact positively with staff and peers, in accordance with Directive #4202, Attachment B, Article IV, which states, in part, ie:

> If at any time the inmate facilitator is found to be lacking in any of the specifications detailed in this Protocol, the Coordinating Chaplain will consult with the respective Chaplain or volunteer clergy and submit a request for the removal of the facilitator to the Deputy Superintendent for Program Services.

A. EIGHTH CLAIM: Robert A. Kirkpatrick, Superintendent; Donna J. Northrup, Inmate Grievance Supervisor

1. August 10, 2008, I was told to write to Karen Bellamy, Director Inmate Grievance Program, to find out my copy of the Superintendent's response on Grievance WDE-28753-08.

2. September 2, 2008. Wrote to Karen Bellamy, Director Inmate Grievance Program because she did not answer my request of August 10, 2008.

3. September 8, 2008. Karen Bellamy, Director Inmate Grievance Program, answered my request and stated that the Superintendent answered my appeal WDE-28753-08, on June 4, 2008, and that the Inmate Grievance Resolution Committee (IGRC) clerk is not in receipt of my appeal.

4. September 21, 2008. Wrote to Robert A. Kirkpatrick, Superintendent that I was denied my right to appeal his decision and quoted the Directive that he is suppose to serve a copy of his written response on me.

5. October 1, 2008. Karen Bellamy, Director Inmate Grievance Program, answered my letter of September 2, 2008.

6. September 12, 2008. Sent a response to Karen Bellamy, Director Inmate Grievance Program on WDE-28753-08, and asked her questions, such as, why I didn't receive a copy of the superintendent's decision so that I could of appealed to CORC ? Why didn't Donna J. Northrup, Inmate Grievance Supervisor, send me a copy to appeal ? Why didn't you tell me this in my letter to you of August 10, 2008 ? Why do I have to file a new grievance when the IGS does not want to do her job ?

7. October 9, 2008. Karen Bellamy, Director Inmate Grievance Program responded to my letter of September 12, 2008, and quoted an unknown

Directive section again.

8. September 24, 2008. WDE-28753-08, letter from Donna J. Northrup, Inmate Grievance Supervisor, that states she has sent me two copies of the superintendent's response through regular facility mail on 6/6/08, and is now sending me two more copies.

9. September 26, 2008. Sent a letter to Karen Bellamy, Director Inmate Grievance Program, that Donna J. Northrup, Inmate Grievance Supervisor is denying me an appeal, and that I'm sending you a copy of the documents presented at the IGRC hearing, and request that you except this as a mitigating circumstance that Ms. Northrup did not provide me with a copy on June 6, 2008.

10. October 2, 2008. Received a letter dated September 29, 2008, that was sent to another inmate's company and cell, from Donna J. Northrup, Inmate Grievance Supervisor, stating that she is returning my grievance appeal.

11. October 3, 2008. Sent a letter to Karen Bellamy, Director Inmate Grievance Program, that addresses some of the fabricating statements by Donna J. Northrup, Inmate Grievance Supervisor.

12. October 10, 2008. Memorandum to Robert A. Kirkpatrick, Superintendent, with four (4) exhibits that prove that Donna J. Northrup, Inmate Grievance Supervisor, is not letter me appeal..

13. October 10, 2008. Filed a new Grievance of discrimination against Donna J. Northrup, Inmate Grievance Supervisor, regarding WDE-28753-08, because she is denying me as a Native American to appeal my grievances.

14. October 6, 2008. Karen Bellamy, Director Inmate Grievance Program "refused" all documents and returned them to me that was in response to my letter dated September 26, 2008, She also quoted an unknown

Directive section and stated that I should file a separate grievance.

15. October 24, 2008. Filed an Official complaint (grievance) with Brian Fischer, Commissioner, that he has a problem with the Grievance Supervisor, Donna J. Northrup, of not forwarding appeals and processing grievances pursuant to the Directive and Correction Law, and attached the document dated October 10, 2008.

16. October 28, 2008. The grievance that I submitted WDE-29738-08, was logged as "Harrassment" and was not processed as discrimination as I stated on October 10, 2008.

17. October 28, 2008. Letter from Donna J. Northrup, Inmate Grievance Supervisor, regarding Grievance WDE-29322-08, in response to my letter to Robert A. Kirkpatrick, Superintendent, that I am once again being denied to appeal my grievances.

18. November 17, 2008. Received the Superintendent's decision on Grievance WDE-29322-08, and filed my appeal.

19. November 18, 2008. Received a letter from the Superintendent that alleges my untimeliness he will let me submit an appeal on the Grievance WDE-29322-08.

20. December  2, 2008. Received a letter dated November 25, 2008, from Karen Bellamy, Director Inmate Grievance Program in which she returned the original appeal on WDE-28753-08, and stated that my °

   The constitutional basis for this claim under 42 U.S.C. §1983 is:

The Grievance procedures are not being followed according to the Department of Correctional Services (DOCS) Directive, Correction Law and Federal Law.

---

° appeal was not accepted as it was beyond the time frames outlined in Directive #4040 and I did not present sufficient mitigating cir-cumstance.

**EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:**

Did you grieve or appeal this claim ? Yes. What was the result ?
Inmate Grievance Supervisor, Donna J. Northrup, refused to code
the grievance as discrimination and logged it as harassment; refused
the procedures on another grievance.

Did you appeal that decision ? Yes. What was the result ? Superin-
tendent stated: "The grievant states that IGRC Supervisor discriminated
against grievant by refusing to hear his appeal to the Superintendent's
decision based on the fact that the decision was sent to the wrong cell
location. The employee states that she in no way harassed or discrim-
inated against the grievant. She stated that his appeal was untimely.
This grievance was in fact appealed at the direction of the Superin-
tendent. Even though it was not submitted in a timely manner, and
appeal was denied by Superintendent. The investigating employee states
in reviewing all the information presented as well as the employee's
response to this grievance, there is no evidence to support the grievant's
allegations. The evidence provided to this reviewer does not substantiate
a grievance of harassment, discrimination or abuse of authority by staff".

Did you appeal that decision ? Yes. What was the result ? Central
Office Review Committee (CORC) stated:" CORC notes that this matter has
been properly investigated by the facility administration and the
employee in question has denied any improper action. Contrary to the
grievant's assertions, CORC has not been presented with sufficient
evidence to substantiate any malfeasance by the employee referenced
in this instant complaint.

CORC notes that the grievant was notified five times, in writing,
by the Director of the Inmate Grievance Program, that his appeal of
WDE-28753-08 was appropriately returned to him in accordance with

Directive #4040, Section 701.5(d)(1). For clarification, CORC notes that the Superintendent answered WDE-28753-08 on 6/4/08, and the grievant's did not appeal within the time frames outlined in Directive #4040, nor did he present sufficient mitigating circumstances to warrant an exception to these time limits. There is no evidence of discrimination by the IGP Supervisor, against Native Americans, as alleged.

In regard to the grievant's appeal, CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level.

A. NINTH CLAIM: Mark J. Leonard, Director, Ministerial and Family
Services; Donald Snyder, Coordinating Chaplain; Deacon Gordon
Steinagle, Catholic Chaplain.

1. On March 27, 2008, I sent a request to Rev. Snyder, Coordinating
Chaplain, for a Special Permit for Shrine in cell pursuant to DOCS
Directive #4202, N.(d), so that all my religious items are in one
place.

2. On April 21, 2008, I sent a request to Rev. Snyder, Coordinating
Chaplain, for a Special Permit for Beads on my religious items
pursuant to DOCS Directive #4202, N.(2)(c).

3. On May 23, 2008, I filed my appeal to the Director of Ministerial
and Family Services, Mark J. Leonard.

4. On May 25, 2008, I discussed this issue of the permits with Clint
Shenandoah, Native American Chaplain, at the Planting Ceremony.

5. On May 26, 2008, I sent a letter to Clint Shenandoah, and explained
once again the full details about the problem of not getting my permit
for a Shrine.

6. On December 7, 2008, I sent a letter to Mark J. Leonard, Director
of Ministerial and Family Services of his failure to respond for
Special Permits under DOCS Directive #4202, N.(2)(d), and that there
seems to be prejudice against me as a Native American.

7. On December 7, 2008, I filed a grievance WDE-29955-08, and sent
a copy of the grievance to Mark J. Leonard, Director Ministerial and
Family Services.

8. On December 2008, a letter was sent from Omega B. Alston, Assis-
tant Director of Ministerial Services, that acknowledges my letter
and copy of the grievance that I sent to Mark Leonard.

9. On February 1, 2009, I sent another request to Clint Shenandoah, Native American Chaplain, because the Deputy Superintendent of Security said it was his responsibility to get it approved for the permits.

The Constitutional basis for this claim under 42 U.S.C. §1983 is: Denied religious beads and religious Shrine, both that require a permit.

### EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:

Did you grieve or appeal this claim ? Yes. What was the result ? Inmate Grievance Resolution Committee (IGRC) stated that: Per investigation it has been determined that per directive 4202 the grievant can have the items he asked for. The only thing is the item should not exceed $50 in value. The grievant should have been informed in writing for a decision to invalidate a permit.

Granted to that extent.

Did you appeal that decision ? Yes. What was the result ? Superintendent's decision stated: Per investigation, Dir.#4202,N. provides the guidelines for beads and shrines. Dir.4202,L,5, provides the guidelines for Native American permitted items. There is no provision for a wooden bowl. Grievant should address his issues through his religious advisor. Grievants advisor should contact the Director of Ministerial and Family Services with proof that a wooden bowl is a necessity for Native American Religious practice. Directive will be followed until other instruction from Ministerial Services is advised.

Did you appeal that decision ? Yes.

A. TENTH CLAIM: Kenneth S. Perlman, Deputy Commissioner Program Services; Robert A. Kirkpatrick, Superintendent; Karen F. Crowley, Deputy Superintendent for Programs; Deacon Gordon Steinagle, Catholic Chaplain.

1. On January 2, 2009, I received a memorandum dated 30 December 2009, from Deacon Gordon Steinagle, Catholic Chaplain, of the dates he listed for the Native American Festivals for 2009.

2. On January 4, 2009, I submitted a memorandum to Karen F. Crowley, Deputy Supt. for Programs, of my objection to the "2009 Special Events Calendar", that is an insult and offensive to me and quoted Hughes v. Goord, §V.(A); DOCS Directive #4202, G. (1)(note).

3. In a memorandum dated January 7, 2009, Karen F. Crowley, Deputy Supt. for Programs, responded to my memorandum of January 4, 2009, and stated: "Deacon Steinagle does not prepare the Special Events Calendar. What is your objection?".

4. Sent a F.O.I.L request dated January 9, 2009, to Kenneth S. Perlman, Deputy Commissioner Program Services, and requested a copy of the "Religious Holy Day Calendar", that would "list the Native American Community and all known days of observance and ceremonies that are celebrated as the cycle of Nature dictates (actual date for each ceremony begins approximately around or on the New Moon of each month)".

5. Sent a request dated Jauary 9, 2009, to Thomas Porter, for a copy of the Iroquois ceremonial cycle that begins on New Moon each month.

6. Obtained a copy of the Special Events Calendar 2009, that was approved by Robert A. Kirkpatrick, Superintendent, and it lists only three ceremonies for Native Americans that are correct, e.g., January, April and November. The other seven that it lists are either in the middle of the month, on the wrong month, or not even one of the

ceremonies.

7. In a memorandum dated January 10, 2009, I submitted an answer to the objection that Karen Crowley, Deputy Supt. for Programs, did not understand and quoted the Directive and an Article that proves that the Special Event Calendar did not meet the requirements of the Directive to have our ceremonies on the dates as the cycle of Nature dictates (New Moon).

8. In a letter dated January 16, 2009, Chad Powell, Administrative Assistant F.O.I.L Unit responded that I will get a reply to my F.O.I.L request.

9. In a letter dated January 26, 2009, Mr. Powell responded that I was to send $6.50 for 26 pages of the information that I requested (Religious Holy Day Calendar).

10. In a letter dated February 17, 2009, I sent Mr. Powell the $6.50 for a copy of the religious holy day calendar.

11. On February 25, 2009, I received in the legal mail from Chad Powell, Administrative Assistant, a copy of the "Religious Holy Day Calendar."

12. The Religious Holy Day Calendar that is issued pursuant to DOCS Directive #4202 and to all Superintendents, proves that the Special Events Calendar of Wende Correctional Facility, is an insult and offensive to Native Americans and their ceremonies and religious rights.

13. Someone ordered that I not be given any grievance forms.

14. On February 25, 2009, I wrote on a piece of paper with carbon paper under neath, a grievance.

15. On or about March 12, 2009, I asked Donna Northrup, Inmate Grievance Supervisor if she had my grievance. She stated yes "I have your

grievance, what else would I do with it"?

16. On March 29, 2009, I sent Robert A. Kirkpatrick, Superintendent a copy of my grievance of February 25, 2009, that I did not receive a hearing and I'm appealing to the next step, pursuant to the Directive #4040, and included the exhibits.

The constitutional basis for this claim under 42 U.S.C. §1983 is: Disrespectful (savages) in scheduling Native American ceremonies.

EXHAUSTION OF YOUR ADMINISTRATIVE REMEDIES FOR THIS CLAIM:

Did you grieve or appeal this claim ? Yes. What was the result ?

A. ELEVENTH CLAIM: Brian Fischer, Commissioner; Robert A. Kirkpatrick,
Superintendent; Deacon Gordon Steinagle, Catholic Chaplain.


1. In a letter to Thomas Porter, Native American Chaplain, I explained
about the problem of not being able to purchase flour and oil from the
commissary to make fried bread at the ceremonies. I also attached a
letter from the Deputy Commissioner and Counsel that agreed with me
that we are allowed to purchase items from the outside vendor or
commissary and bring the items to the ceremony.

2. I spoke with Robert A. Kirkpatrick, Superintendent, and he refused
to allow the Native American members to purchase flour or oil from the
commissary. Mr Kirkpatrick stated that the Native Americans can use
the Purchase Request to buy items from the commissary.

3. In a letter dated August 21, 2007, Thomas Porter stated he will
put the letter I sent him in the file for future groups.

4. On or about September 9, 2007, the secretary and myself prepared
an Event Packet and signed a Purchase Request to purchase oil for the
Harvest Ceremony in October.

5. September 14, 2007, I received in the mail a copy of the Event
Packet that Deacon Gordon Steinagle approved and signed it on Sept-
ember 13, 2007.

6 On or about October 28, 2007, I submitted a grievance,#WDE-27538-07,
because Native American's are being denied under Hughes v. Goord,
§V.(F), to purchase cooking oil from the commissary.

7. In a letter dated January 25, 2008, I sent a denial of being
called a liar or insinuated as I'm a liar by the Central Office Review
Committee (C.O.R.C), of not submiting the Event Packet in a timely
manner.

8. In a letter dated February 20, 2008, Karen Bellamy, Director,

Inmate Grievance Program, responded and affirmed her statement that I'm a liar and that I have to address these issues with the Staff Advisor, who did not do the processing of the paperwork that is required of him in the first place.

CAUSE

FIRST: denied worship materials; supplies and education needs; denied ceremonial items; required to practice another Way of Life (religion) over our own; language; etc.

SECOND: retaliate; discrimination; attempted extortion as harassment.

THIRD: destroying Native American Religious (locker) area (Lodge/ sanctuary); moving the Sacred Drum from a Sacred area into an area so that it could and did get desecrated with human waste, and other items.

FOURTH: prejudice for fundraiser.

FIFTH: Native Americans are refused to be a fulltime religious Group pursuant to DOCS Directive.

SIXTH: Staff Advisor approving for money to be illegally taken from the Native American Account and having contraband delivered into the prison.

SEVENTH: retaliation for filing grievances.

EIGHTH: grievance procedures are not being followed according to law.

NINTH: prejudice in refusing to issue permit for shrine and permit for Native American beads on religious items.

TENTH: Disrespectful (savages) in scheduling Native American Ceremonies.

ELEVENTH: Native Americans are being denied to purchase flour and oil for their ceremonial meals that is central for the blessings.

## RELIEF SOUGHT

1. <u>FIRST CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars, and that an order to the Department of Correctional Services (DOCS), that they cannot require another Native American prisoner that is not of the Longhouse religion, to practice the Longhouse religion, and that DOCS supply all materials that would be the property of DOCS, as DOCS did for the Protestant Chapel, Catholic Chapel, or Mosque.

2. <u>SECOND CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars.

3. <u>THIRD CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars. The Defendants should be ordered to replace the Native American Locker (area) with the same kind or equal size as the one the Defendants had removed, and that would be of sufficient size to store all artifacts as they pertain to the Native American religion, and the Defendants should replace the now unsacred drum that the Defendants had ordered to be moved to an area that could and did get desecrated with human waste by non-native American people. The locker should also have a numbered seal and logbook that is recorded every time the locker is opened, and the locker should be labeled as a religious area pursuant to Directive #4910, as it was on April 8, 2008.

4. <u>FOURTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars.

5. <u>FIFTH CLAIM:</u> Plaintiff seeks an injunction, punitve and compensatory damages in the amount of two hundred fifty thousand dollars, and an order that DOCS has to adhere to their own rules and regulations of the Directives.

6. <u>SIXTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars, and that the Defendants show cause why the Defendant, Deacon Gordon Steinagle was not prosecuted when the evidence did in fact prove he commited a felony, and that Defendant Deacon Godon Steinagle be prosecuted.

7. <u>SEVENTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars.

8. <u>EIGHTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars.

9. <u>NINTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars, and that Plaintiff be given a Special Permit for a Shrine that includes all the items on the list for the Shrine, and a Special Permit for Beads that includes the list of colors. NOTE: Nothing is a threat on security or threat on the safety of personnel, or gang related, etc.

10. <u>TENTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars for the defendants intentional omission to adhere to their own directive.

11. <u>ELEVENTH CLAIM:</u> Plaintiff seeks an injunction, punitive and compensatory damages in the amount of two hundred fifty thousand dollars, and amendment to the Directive that allows Native Americans to purchase flour and cooking oil from the commissary or outside vendor and bring the items to the ceremony site, as well as food items.

12. Twelveth: Defendants have shown through their attitudes and actions a sectarian bias or bigotry towards the plaintiff that can or could be termed as hatred and is contrary to their own directives and law of the State of New York and the Constitution, and defendants should be held accountable.

## DECLARATORY

That Plaintiff be not subject of any retaliatory action because
he is exercising his religious belief, that if the Plaintiff is
the subject of any retaliatory action because of this suit, that
all parties, because of their successors, agents, employees, assigns
and those acting in concert with them, the defendants be further
sanctioned pursuant to 42 U.S.C.§1997d.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___April 4___, 2009

_____
ERNEST W. VANN/PLAINTIFF